**Jason S. Nunnermacker, Esq. (JN 2849)**
**GUAGLARDI & MELITI, LLP**
**365 WEST PASSAIC STREET, SUITE 130**
**ROCHELLE PARK, NEW JERSEY 07662**
**(201) 947-4100**
**Jnunnermacker@adgmlaw.com**
**Attorneys for Plaintiff**
_____

| | |
|---|---|
| JESUS CASTRO, : | UNITED STATES DISTRICT COURT |
| : | DISTRICT OF NEW JERSEY |
| : | |
| Plaintiff, : | |
| : | CIVIL CASE NO.: |
| v. : | |
| : | |
| CITY OF PATERSON, : | |
| : | COMPLAINT AND JURY DEMAND |
| Defendant, : | |

_____:

Jesus Castro, residing at 242 Sussex Street, Paterson, New Jersey, herein alleges against the Defendant, City of Paterson, as follows:

## VENUE AND JURISDICTION

1.      This Court has jurisdiction pursuant to 28 USC §1331 over Plaintiff's federal-based claims.

2.      This Court has supplemental jurisdiction pursuant to 28 USC §1367 over Plaintiff's State-based claims.

3.      Venue is proper in this Court pursuant to 28 USC §1391(b) as Plaintiff resides within this jurisdiction of this Court and the public entity defendant is within this Court's jurisdiction.

## FACTS COMMON TO ALL COUNTS

4.      Defendant is a municipality located in Passaic County, New Jersey.

5.      Plaintiff Jesus Castro ("Plaintiff") is employed by the Defendant City of Paterson ("Defendant") as an Interim Assistant Zoning Officer.

6.      As the Interim Assistant Zoning Officer, Plaintiff's duties include:

   a)  Examining working plans of proposed structures for compliance with state, county, and local zoning laws;
   b)  Read and correct final plans;
   c)  Consult with architects, owners and contractors on compliance problems;
   d)  Assists in the promulgations of zoning regulation.

7.      The salary for the Interim Assistant Zoning Officer, per the Defendant, is to be $60,000.00 per annum.

8.      Plaintiff has applied to be the Assistant Zoning Officer but the Defendant fails to promote Plaintiff to that position despite providing Plaintiff a satisfactory job evaluation in the position.

9.      Plaintiff is also qualified for the position of Zoning Officer for the Defendant, a position that the Defendant elects to leave vacant rather than promote Plaintiff to that position.

10.      Defendant has failed to promote Plaintiff to the title of Assistant Zoning Officer or Zoning Officer to retaliate against Plaintiff for a) filing, and prevailing, a complaint with the State of New Jersey Civil Service Commission ("Commission") regarding Plaintiff's former job title as Housing and Zoning Inspector and Plaintiff's complaints about Defendant's violation of NJAC 4A:3-3.5(c); b) investigating known political allies for the current mayor of the Defendant, Andre Sayegh; c) threatening to file a complaint with the State of New Jersey's Office of Public Integrity and Accountability, a division of the New Jersey Department of Law and Public Safety ("Office of Public Integrity") as to Plaintiff's superiors' interference and

obstruction of Plaintiff's investigation of alleged zoning violations by the Defendant's mayor's political allies which Plaintiff reasonably believed violated NJSA 2C:27-3, NJSA 2C:27-10; and/or other public corruption laws; d) Plaintiff's political support of Mayor Sayegh's political opponents within the City of Paterson.

## PLAINTIFF'S COMPLAINT TO THE COMMISSION

11.     Plaintiff was initially hired by the Defendant's previous political administration, political opponents of the current administration, as a Housing and Zoning Inspector earning an annual salary of $30,000.00.   Plaintiff's initial hire date was June 19, 2017.

12.     In January 2020, after the current administration assumed office, Plaintiff filed a complaint with the Commission alleging that the duties he was actually performing the job of a Senior Code Enforcement Officer, a job that entitles Plaintiff to a higher salary.

13.     On November 19, 2020, after an approximate 11-month investigation, the Commission found in Plaintiff's favor determining that Plaintiff was performing the actual job of the Senior Housing Inspector/Zoning Officer and that Plaintiff shall serve provisionally in that title pending promotional examination procedures.

14.     With the job title of Senior Housing Inspector/Zoning Officer, Plaintiff should have been paid a salary of $70,000.

15.     However, Plaintiff was never paid that salary and Defendant failed commence the necessary promotional examination procedures, despite the order of the Commission, to be the permanent Senior Housing Inspector/Zoning Officer.

16.     Plaintiff complained several times to the Defendant for Defendant's failure to comply with the November 19, 2020 Determination of the Commission between November 2020-.April 2021, specifically Plaintiff's reasonable belief that Defendant failed to comply with NJAC 4A:3-3.5(c).

## PLAINTIFF'S ATTEMPTS TO INVESTIGATE ALLEDGED CODE VIOLATIONS BY THE MAYOR'S POLITICAL ALLIES

17.     As part of Plaintiff's duties as a Senior Housing Inspector/Zoning Officer, the title the Commission determined he belonged in, Plaintiff is charged with investigating zoning issues throughout the City of Paterson, and if warranted, Plaintiff is to serve a summons on the offender.

18.     Plaintiff attempted to investigate allegations that the property commonly known as the Art Factory in the City of Paterson at 9 Spruce Street was in violation of several of Defendant's zoning codes, including property maintenance code issues that were not remediated and for failure to comply with zoning board conditional approval and stipulations.

19.     As reasonably believed by Plaintiff, 9 Spruce Street is owned by a political ally of Mayor Sayegh, the current mayor of the Defendant.

20.     Plaintiff attempted several times to obtain relevant documents and information from the Defendant's construction official, Jerry Lobozzo and his staff.

21.     The specific documents requested were:

     a.   Certificates of Occupancy and Temporary Certificates of Occupancies;

     b.   Permits;

     c.   Engineering reports.

22.     As Plaintiff's attempts to gain the relevant documents and information were consistently ignored, it became Plaintiff's objective reasonable belief that the Defendant interfering with Plaintiff's investigation into the Art Factory's alleged zoning violations so that the Defendant's mayor's political ally/supporter would not receive a summons.

23.     After Plaintiff's several attempts, on or about April 19, 2021, Plaintiff sent an email to the Defendant's construction official about his reasonable concerns about the efforts to stymie Plaintiff's investigation of the Art Factory and advised that he would be alerting the Office of Public Integrity of Plaintiff's objectively reasonable belief of the interference with Plaintiff's job duties to benefit the Mayor's political supporter/ally.

24.     Plaintiff copied Osner Charles, the Assistant Director of the Department of Economic Development, Plaintiff's superior and appointed during the tenure of Mayor Sayegh's current administration, on his April 19, 2021, e-mail.

25.     The Office of Public Integrity's mission is to investigate and prosecute criminal abuses of the public trust and misconduct of public officials/employees.  The Office of Public Integrity reports directly to the New Jersey Attorney General.

26.     Mr. Osner responded to Plaintiff's April 19, 2021 email reprimanding him and instructing him not to contact the Office of Public Integrity.

27.     Plaintiff reasonably believed that Defendant and Osner were either attempting to violate or violated NJSA 2C:27-3 and/or NJSA 2C:27-10 by interfering in the investigation of the Art Factory.

**POLITICAL DISCRIMINATION BASED UPON DEFENDANT'S BELIEF THAT PLAINTIFF IS A POLITICAL SUPPORTER OF AN ADVERSE POLITICAL GROUP WITHIN THE CITY**

28.     During Mayor Sayegh's 2018 campaign for the office he now holds, it was widely reported throughout the City that controversial campaign material was distributed throughout the City that was racially derogatory about then candidate Sayegh.

29.     An article appeared on May 7 2018 in the local media outlet, the *Paterson Times,* "Paterson mayoral race: Sayegh camp asks authorities to investigate racist mailer" ("Article").

30.     In  the Article, a photograph appears of the alleged distributor of the racist campaign material.

31.     The Article further reports that the person appearing in the photograph was believed to be the Plaintiff.

32.     Indeed, the Article cites that "[s]ome of the councilman's [referring to then Councilman Sayegh] supporters suggested the man in the footage is Jesus Castro, a municipal inspector, who has criticized Sayegh over the years."   The Article further recites that "[t]he actor in the surveillance still photograph has an eerie resemblance to Castro."

33.     In the very same Article, a photograph of Plaintiff appears in which campaign posters advocating the candidacy of Alex Mendez for Mayor in the 2018 mayoral election are in the background.

34.     Alex Mendez is a councilman in the City and was an opponent of Mayor Sayegh in the 2018 mayoral election.

35.     As a result of a) Plaintiff filing, and prevailing, a complaint with the Commission regarding Plaintiff's former job title as Housing and Zoning Inspector and Plaintiff's complaints about Defendant's violation of NJAC 4A:3-3.5(c); b) Plaintiff investigating known political

allies of Mayor Sayegh for zoning violations; c) Plaintiff threatening to file a complaint with the Office of Public Integrity as to Plaintiff's superiors' interference and obstruction of Plaintiff's investigation of alleged zoning violations by the Defendant's mayor's political allies which Plaintiff reasonably believed violated NJSA 2C:27-3, NJSA 2C:27-10; and/or other public corruption laws; d) discrimination against Plaintiff, a non-policy employee of the Defendant, for Plaintiff's perceived political support of Mayor Sayegh's political opponents within the City of Paterson, Plaintiff has not been promoted to Senior Code Enforcement Officer, Assistant Zoning Officer, and/or Zoning Officer.

36.     Defendant's failure to promote Plaintiff, as alleged above, are adverse employment actions depriving Plaintiff of the salary commensurate with those titles.

37.     These adverse employment actions all occurred in the past 8 months.

## COUNT ONE
### (Violation of and NJSA 34:19-3(c)-Plaintiff's Objection to Defendant's Reasonably Believed Failure to Comply with NJAC 4A:3-3.5(c))

38.     Plaintiff repeats and realleges the facts set forth above as if set forth herein at length.

39.     NJAC 4A:3-3.5(c) requires that within 30 days of receipt of a reclassification determination by the Commission, the Defendant was to effectuate the required title change in Plaintiff's employment.

40.     The Commission determined on November 19, 2020, that Plaintiff was performing the title of Senior Housing Inspector/Zoning Officer and the Defendant was required to undergo the necessary promotional examination procedures.

41.     Plaintiff should be paid the annual salary of $70,000.00 for such a position.

42.     However, Defendant has refused to effectuate that title change and/or do any of the necessary promotional examination procedures.

43.     Plaintiff has continued to object that the Defendant has failed to comply with NJAC 4A:3-3.5(c), which has resulted in Defendant's retaliation against Plaintiff by a) failure to promote Plaintiff to Senior Housing Inspector/Zoning Officer and b) failure to even promote Plaintiff to the lesser title of Assistant Zoning Officer.

44.     As a result, Defendant is in violation of NJSA 34:19-3(c).

45.     As a result of Defendant's retaliation against Plaintiff, Plaintiff has been harmed in the amount of at least $200,000.00.

WHEREFORE, Plaintiff demands judgment against the Defendant in the amount to be proven at trial which is at least $200,000.00 plus all other compensatory, consequential, and punitive damages and an award of attorney's fees.  Plaintiff further demands judgment that he be promoted to Senior Housing Inspector/Zoning Officer with all back-dated seniority, benefits and salary.

## COUNT TWO
**(Violation of NJSA 34:19-3(a) as to Plaintiff's Threaten to Disclose Defendant's Reasonably Believed Violations of NJSA 2C:27-3, NJSA 2C:27-10 and other Public Corruption Laws)**

46.     Plaintiff repeats and realleges the facts set forth above as if set forth herein at length.

47.     There are several public laws that prohibit public corruption in municipal government including, NJSA 2C:27-3 and NJSA 2C:27-10, and are laws contemplated by NJSA 34:19-3(a)(1) and (2).

48.     As part of Plaintiff's duties as a Senior Housing Inspector/Zoning Officer, the title the Commission determined he belonged in, Plaintiff is charged with investigating zoning issues throughout the City of Paterson, and if warranted, Plaintiff is to serve a summons on the offender.

49.     Plaintiff attempted to investigate allegations that the property commonly known as the Art Factory in the City of Paterson at 9 Spruce Street was in violation of several of Defendant's zoning codes, including property maintenance code issues that were not remediated and failure to comply with zoning board conditional approval and stipulations.

50.     As reasonably believed by Plaintiff, 9 Spruce Street is owned by a political ally of Mayor Sayegh, the current mayor of the Defendant.

51.     Plaintiff attempted several times to obtain relevant documents and information from the Defendant's construction official, Jerry Lobozzo and his staff.

52.     The specific documents requested were:

a.  Certificates of Occupancy and Temporary Certificates of Occupancies;

b.  Permits;

c.  Engineering reports.

53.     As Plaintiff's attempts to gain the relevant documents and information were consistently ignored, it became Plaintiff's objectively reasonable belief that his superiors were interfering with Plaintiff's investigation into the Art Factory's alleged zoning violations so that the Defendant's mayor's political ally/supporter would not receive a summons.

54.     After Plaintiff's several attempts, on or about April 19, 2021, Plaintiff sent an email to the Defendant's construction official about his reasonable concerns about the efforts to stymie Plaintiff's investigation of the Art Factory and advised that he would be alerting the

Office of Public Integrity of Plaintiff's objectively reasonable belief of the interference with Plaintiff's job duties to benefit the Mayor's political supporter/ally.

55.     Plaintiff copied Osner Charles, the Assistant Director of the Department of Economic Development, Plaintiff's superior and appointed during the tenure of Mayor Sayegh's current administration, on his April 19, 2021, e-mail.

56.     The Office of Public Integrity's mission is to investigate and prosecute criminal abuses of the public trust and misconduct of public officials/employees.  The Office of Public Integrity reports directly to the New Jersey Attorney General, and therefore, it is a public body as contemplated by NJSA 34:19-3(a).

57.     Osner responded to Plaintiff's April 19, 2021 email reprimanding him and instructing him not to contact the Office of Public Integrity.

58.     Plaintiff reasonably believed that Defendant and Osner were interfering in the investigation of the Art Factory.

59.     As a result of Plaintiff's threaten disclosure to the Office of Public Integrity, Defendant has retaliated against Plaintiff by a) failure to promote Plaintiff to Senior Housing Inspector/Zoning Officer and b) failure to even promote Plaintiff to the lesser title of Assistant Zoning Officer.

60.     Therefore, Defendant is in violation of NJSA 34:19-3 (a).

61.      As a result of Defendant's retaliation against Plaintiff, Plaintiff has been harmed in the amount of at least $200,000.00.

WHEREFORE, Plaintiff demands judgment against the Defendant in the amount to be proven at trial which is at least $200,000.00 plus all other compensatory, consequential, and punitive damages and an award of attorney's fees.  Plaintiff further demands judgment that he be

promoted to Senior Housing Inspector/Zoning Officer with all back-dated seniority, benefits and salary.

## COUNT THREE
**(Violation of <u>NJSA</u> 34:19-3(c) as to Plaintiff's Objection and Refusal to Participate in Defendant's Reasonably Believed Violation of <u>NJSA</u> 2C:27-3, <u>NJSA</u> 2C:27-10  and other Public Corruption Laws)**

62.     Plaintiff repeats and realleges the facts set forth above as if set forth herein at length.

63.     There are several public laws that prohibit public corruption in municipal government including, <u>NJSA</u> 2C:27-3 and NJSA 2C:27-10, and are such laws contemplated by <u>NJSA</u> 34:19-3(c)(1) and (2).

64.     As part of Plaintiff's duties as a Senior Housing Inspector/Zoning Officer, the title the Commission determined he belonged in, Plaintiff is charged with investigating zoning issues throughout the City of Paterson, and if warranted, Plaintiff is to serve a summons on the offender.

65.     Plaintiff attempted to investigate allegations that the property commonly known as the Art Factory in the City of Paterson at 9 Spruce Street was in violation of several of Defendant's zoning codes, including property maintenance code issues that were not remediated and failure to comply with zoning board conditional approval and stipulations.

66.     As reasonably believed by Plaintiff, 9 Spruce Street is owned by a political ally of Mayor Sayegh, the current mayor of the Defendant.

67.     Plaintiff attempted several times to obtain relevant documents and information from the Defendant's construction official, Jerry Lobozzo and his staff.

68.     The specific documents requested were:

a.   Certificates of Occupancy and Temporary Certificates of Occupancies;

11

      b.  Permits;

      c.  Engineering reports.

69.    As Plaintiff's attempts to gain the relevant documents and information were consistently ignored, it became Plaintiff's objective reasonable belief that his superiors were interfering with Plaintiff's investigation into the Art Factory's alleged zoning violations so that the Defendant's mayor's political ally/supporter would not receive a summons.

70.    After Plaintiff's several attempts, on or about April 19, 2021, Plaintiff sent an email to the Defendant's construction official about his reasonable concerns about the efforts to stymie Plaintiff's investigation of the Art Factory and advised that he would be alerting the Office of Public Integrity of Plaintiff's objectively reasonable belief of the interference with Plaintiff's job duties to benefit the Mayor's political supporter/ally.

71.    Plaintiff copied Osner Charles, the Assistant Director of the Department of Economic Development, Plaintiff's superior and appointed during the tenure of Mayor Sayegh's current administration, on his April 19, 2021, e-mail.

72.    The Office of Public Integrity's mission is to investigate and prosecute criminal abuses of the public trust and misconduct of public officials/employees.  The Office of Public Integrity reports directly to the New Jersey Attorney General, and therefore, it is a public body as contemplated by NJSA 34:19-3(a).

73.    Osner responded to Plaintiff's April 19, 2021 email reprimanding him and instructing him not to contact the Office of Public Integrity.

74.    Plaintiff reasonably believed that Defendant and Osner were interfering in the investigation of the Art Factory.

75.    Plaintiff objected to and refused to participate in his reasonable belief that Defendant and Osner were interfering in the investigation of the Art Factory.

76.    As a result of Plaintiff's objection and refusal to participate in the interference of the investigation into the Art Factory, Defendant has retaliated against Plaintiff by a) failure to promote Plaintiff to Senior Housing Inspector/Zoning Officer and b) failure to even promote Plaintiff to the lesser title of Assistant Zoning Officer.

77.    Therefore, Defendant is in violation of NJSA 34:19-3 (c).

78.    As a result of Defendant's retaliation against Plaintiff, Plaintiff has been harmed in the amount of at least $200,000.00.

WHEREFORE, Plaintiff demands judgment against the Defendant in the amount to be proven at trial which is at least $200,000.00 plus all other compensatory, consequential, and punitive damages and an award of attorney's fees.  Plaintiff further demands judgment that he be promoted to Senior Housing Inspector/Zoning Officer with all back-dated seniority, benefits and salary.

## COUNT FOUR
### (Violation of the New Jersey Civil Rights Act: Deprivation of Plaintiff's First Amendment Rights and Rights Under Article 1, Paragraph 6 of the New Jersey Constitution

79.    Plaintiff repeats and realleges the facts set forth above as if set forth herein at length.

80.    In relevant part, NJSA 10:6-2(c) provides:

Any person who has been deprived of any substantive due process or equal protection rights, privileges, immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State…acting under color of law, may bring a civil action for damages…

81. The First Amendment to the United States Constitution and Article 1, Paragraph 6 of the New Jersey Constitution guarantee and protect Plaintiff's rights to support a political candidate of his own choice and the right not to support a particular candidate.

82. Plaintiff is not in a policy-making position with the Defendant in which his political beliefs and political affiliations are germane.

83. As perceived by the Defendant, Plaintiff was a political supporter of Mayor Sayegh's rival, Alex Mendez, in the 2018 Mayoral election within the Defendant.

84. Further, a photograph appeared in a local media outlet widely distributed throughout the City in May 2018 showing Plaintiff at a political event/venue with several campaign posters of Councilman Mendez in the background.

85. Then Councilman Sayegh and his supporters accused Plaintiff of distributing racially offensive campaign material during that political campaign.

86. Plaintiff's political affiliation and/or Plaintiff's political affiliation as perceived by the Defendant, has been a motivating factor in the Defendant's failure to promote Plaintiff to Assistant Zoning Officer and/or Zoning Officer.

87. As a result of Defendant's retaliation against Plaintiff, Plaintiff has been harmed in the amount of at least $200,000.00.

WHEREFORE, Plaintiff demands judgment against the Defendant in the amount to be proven at trial which is at least $200,000.00 plus all other compensatory, consequential, and punitive damages and an award of attorney's fees. Plaintiff further demands judgment that he be promoted to Senior Housing Inspector/Zoning Officer with all back-dated seniority, benefits and salary.

**COUNT FIVE**
**(Action Pursuant to 42 USC 1983 For Political Affiliation Discrimination in Violation of the First Amendment of the United States Constitution)**

88.     Plaintiff repeats and realleges the facts set forth above as if set forth herein at length.

89.      42 USC §1983 provides Plaintiff a "civil action for deprivation of rights" secured by the United States Constitution and any law enacted thereunder specifically:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or their proper proceeding for redress…

90.     The First Amendment to the United States Constitution guarantee and protect Plaintiff's rights to support a political candidate of his own choice and the right not to support a particular candidate.

91.     Plaintiff is not in a policy-making position with the Defendant in which his political beliefs and political affiliations are germane or required.

92.     Plaintiff was a political supporter of Mayor Sayegh's rival, Alex Mendez, in the 2018 Mayoral election within the Defendant.

93.     Further, a photograph appeared in a local media outlet widely distributed throughout the City in May 2018 showing Plaintiff at a political event/venue with several campaign posters of Councilman Mendez in the background.

94.     Then Councilman Sayegh and his supporters accused Plaintiff of distributing racially offensive campaign material during that political campaign.

95.     Plaintiff's political affiliation and/or Plaintiff's political affiliation as perceived by the Defendant, has been a motivating factor in the Defendant's failure to promote Plaintiff to Assistant Zoning Officer and/or Zoning Officer.

96.     As a result of Defendant's retaliation against Plaintiff, Plaintiff has been harmed in the amount of at least $200,000.00.

WHEREFORE, Plaintiff demands judgment against the Defendant in the amount to be proven at trial which is at least $200,000.00 plus all other compensatory, consequential, and punitive damages and an award of attorney's fees.  Plaintiff further demands judgment that he be promoted to Senior Housing Inspector/Zoning Officer with all back-dated seniority, benefits and salary.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

GUAGLARDI & MELITI, LLP

Jason S. Nunnermacker, Esq.
Attorney for Plaintiff
365 W. Passaic Street, Suite 130
Rochelle Park, NJ 07662
201-947-4100
jnunnermacker@adgmlaw.com

August 4, 2021